No. 9874.

FAULKNER v. THE CITY OF AURORA.

CITY.—*Coasting on Streets.*—*Personal Injury to Traveller.*—*Liability.*—A city,. after having adopted an ordinance prohibiting, upon its streets, sports tending to produce bodily injury, is not liable for a collision occurring upon a street, whereby a traveller was injured, as the result of coasting. for sport, though the sport was carried on by crowds, publicly, in the presence of its officers and police, to the obvious danger of persons us-- ing the street.

From the Dearborn Circuit Court.

*O. F. Roberts,* for appellant.

*C. S. Jelley,* for appellee.

MORRIS, C.—The appellant sued the appellee for an in- jury sustained by his son, on Main street in the city of Aurora,. on the 30th day of November, 1880.

It is alleged in the complaint, that from the 1st day of No- vember, 1880, until the 15th day of February, 1881, said Main street, extending from Fifth street to First street in said city, and crossed by Fourth, Third and Second streets in said city, was, during said time, between Fifth and Third streets,. covered with frozen snow and ice to the depth of five inches, rendering its surface smooth, even and sleek; that during said period large crowds, numbering one hundred persons, daily and nightly assembled on said Main street, between Fifth and Third streets in said city, with the knowledge of the appellee, and in the presence of its mayor, marshal and police officers, and engaged in the sport of sliding and coast- ing down Main street, over Fourth street, where the descent of Main street was very great, at the rate of forty miles per hour, thereby rendering said Main street and Fourth street,. where it crossed the same, dangerous and unsafe for travel; that the plaintiff's son, Benjamin Faulkner, a lad about seven years of age, was accustomed to pass along said Fourth street, over Main street, to and from the public school in said city, that being the most direct and convenient way to and from

Faulkner *v*. The City of Aurora.

said school; that on the 30th day of November, 1880, the appellant's said son was passing over said Main street on Fourth street, when he was struck, without fault on his part, by a sled propelled by the weight of two persons, so unlawfully engaged in the sport of sliding and coasting on said street, whereby his leg was broken, and he was otherwise greatly bruised and injured. It is averred that the appellant's son was confined to his bed for a long time, and that the appellant was put to great trouble and expense in nursing and caring for his said son. It is also averred that the following provisions of the ordinances of the appellee were in force at the time:

"Article 4, section 2. Each officer of the city of Aurora shall faithfully do and perform the duties required of him in his office by the act of incorporation and by the ordinances and by-laws of the city and resolutions of the city council.

"Article 11, sec. 32. It shall be unlawful for any minor or other person or persons to throw stones, play ball, pitch quoits, or engage in any sport or do anything on any street or alley, within the city limits, tending to produce a bodily injury, or endanger the life or property of any person.

"Article 11, sec. —. Any person violating any provision of this article shall, upon conviction before the mayor or other competent jurisdiction, forfeit and pay to said city such penalty as may be assessed, not less than one nor more than one hundred dollars, with costs."

The appellee demurred to the complaint, on the ground that it did not contain facts sufficient to constitute a cause of action. The demurrer was sustained. The appellant excepted, and, electing to stand by his complaint, final judgment was rendered against him and in favor of the appellee, for costs.

The rendering of judgment against the appellant, and the sustaining of the demurrer to his complaint, are assigned as errors.

It is alleged in the complaint that the appellee had notice

of the occupation of its street by said coasters, and that the sport of coasting was carried on in the presence of its officers. It is also alleged that the appellee had, by ordinance, prohibited, under suitable penalties, all persons from engaging in any sport on its streets that might be dangerous to life or property; that said coasting was dangerous to life, and that no efforts were made by the appellee or its officers to suppress or prevent this dangerous sport.

That the occupation of one of the travelled streets of the appellee by coasters, in the manner stated in the complaint, would seriously interfere with the legitimate public use of the same, and endanger the safety of those rightfully travelling along and across it, hardly admits of a doubt. Such a use of the streets of a city is not only unauthorized and wrong, but altogether inconsistent with the rights of the public.

"Highways," says a recent writer of approved authority, "are intended for, and devoted to, the purposes of public travel, and every person may exercise this right reasonably. But every unreasonable use of the same, whereby others are hindered, delayed or annoyed in a like reasonable use of the same, or in the rights incident thereto, is a nuisance. But whether a particular use, that is not a nuisance *per se,* is an unreasonable use and nuisance, is a question of fact, to be judged of from the circumstances of each case." Wood Law of Nuisances, section 251.

Though the coasting on Main street, within the corporate limits of the appellee, as described in the complaint, constituted a nuisance, yet it could hardly be said that if one person should descend said street on a sled at a proper time and at a moderate rate of speed, though in sport and for pleasure merely, such use of the street would necessarily constitute a nuisance. Such a use of the street might not be inconsistent with its use by the public nor render it dangerous or unsafe for travel. A person may drive his horse along the street at a reasonable rate of speed, even for pleasure, consistently with the use of the same by the public; but if he should drive his

horse at a rapid and unreasonable rate of speed, it would endanger the safety of travel, and become a nuisance. Whether the coasting or the driving of the horse upon the street for pleasure would be a nuisance would depend upon the circumstances of each case. A police officer who would attempt to stop the one or the other would act at his peril; he would have to determine the fact, and if he misjudged he would be responsible.

It would be difficult, if not impossible, to suggest any ground upon which, consistently with the adjudged cases and the principles of law, the liability of the appellee for the injury complained of can rest. Those who injured the appellant were in no way connected with the appellee; they acted upon their own volition, and carried on their sport for their own pleasure, not for the benefit of the appellee, nor at its instance. The wrong was theirs, not the appellee's. The sport in which they were engaged was not necessarily a nuisance; it might have been carried on innocently. *Hutchinson* v. *Concord,* 41 Vt. 271. Was it the duty of the appellee to watch the sport and determine, judicially and at its peril, when it ceased to be innocent and lawful and became dangerous and unlawful? And if it failed to discover the line separating between innocence and wrong, is it to be held liable for such error of judgment? The determination of such a question is not only judicial in its character, but it must necessarily depend upon the actual facts in the particular case. Wood Law of Nuisances, *supra*. To hold the appellee liable for errors of judgment upon such a question would be opposed to the decided weight of authority. Dillon Mun. Corp., section 32; *Gale* v. *Kalamazoo,* 23 Mich. 344 (9 Am. R. 80); *Brimmer* v. *Boston,* 102 Mass. 19.

In the case of *Wilson* v. *Mayor, etc.,* 1 Denio, 595, it is held that where a duty, judicial in its nature, is imposed upon a corporation, it is not liable even for misconduct in its exercise.

In this case the appellee had, by ordinance, prohibited all persons from engaging in dangerous sports upon its streets.

It is alleged in the complaint, at least inferentially, that the coasting complained of was carried on in violation of this ordinance. But it is also averred, that neither the appellee nor its officers attempted in any way to suppress or prevent the unlawful occupation of its streets by the coasters.

The appellee, having, by the express terms of the statute, exclusive power over its streets, had authority, doubtless, by ordinance, to empower its officers to stop and suppress coasting upon its streets at once. But was it bound to do so? If it deemed the ordinance referred to in the complaint sufficient to prevent coasting and other dangerous sports upon its streets, is it to be adjudged liable because it did not provide a more stringent, and, perhaps, a better and more efficient, remedy? The law has confided to the legislative judgment and discretion of the common council of the appellee the power to enact ordinances. If, in the honest exercise of this power, the common council fails, through want of experience or defect of judgment, to establish such laws as are most completely and effectively adapted to the accomplishment of the end in view, the city is not liable. Dillon Mun. Corp., section 753, and cases there cited; *Brinkmeyer* v. *City of Evansville,* 29 Ind. 187. It could only prevent or suppress such sports through its officers, and for their neglect, as we shall hereafter see, it is not liable.

We are aware that the case of *Marriott* v. *Mayor, etc.,* 9 Md. 160, is opposed to this conclusion, but we regard the case as exceptional and without support. Besides, by the express provisions of the charter of Baltimore, the city council had, at the time referred to in the opinion, power to declare what should constitute a nuisance, and to abate the same. The court held that it was the duty of the city council to declare by ordinance coasting on its streets to be a nuisance, and to prevent it; and that, for its failure to do so, it might at common law be liable to a party injured, without his fault, by coasters.

Without seriously complaining of the appellee for having

failed to pass a proper ordinance for the prevention of coast-ing, the appellant seems to rest his right to recover upon its failure to execute the ordinance which it had adopted. Was the appellee liable for such failure? Any one of the appel-lee's citizens might, under the ordinance, have instituted pro-ceedings against persons coasting on the streets in violation of its provisions. Grant, however, that it was peculiarly the duty of the officers of the appellee to enforce the ordinance and prosecute all persons violating the same, the appellee would not be liable for their failure to discharge this duty. Dillon says, sec. 754:

" Unless there be a valid contract creating, or a statute de-claring, the liability, a municipal corporation is not bound to provide for and secure a perfect execution of its by-laws, and it is not responsible in a civil action for the neglect of duty on the part of its officers in respect to their enforcement, although such neglect results in injuries to private persons which would otherwise not have happened." A city is not liable for the neglect of its marshal, its police officers or firemen appointed by it. *Buttrick* v. *City of Lowell*, 1 Allen, 172; *Ready* v. *Mayor, etc.*, 6 Ala. 327; *Schultz* v. *City of Milwaukee*, 49 Wis. 254 (35 Am. R. 779); *Levy* v. *Mayor, etc.*, 1 Sandf. 465, ap-proved in *Lorillard* v. *Town of Monroe*, 11 N. Y. 392; *Griffin* v. *Mayor, etc.*, 9 N. Y. 456. But, aside from this view of the case, we think the appellee was not legally bound to prevent or abate the nuisance complained of by the appellant. In the case of *Schultz* v. *City of Milwaukee, supra*, which is precisely the case before us, the court says:

" The coasting or sliding down Poplar street in the manner and to the extent charged in the complaint was, while being indulged in, a grievous public nuisance, which the city au-thorities ought to have prevented or suppressed. But this duty is a public or police, rather than a corporate, duty, in the per-formance of which the corporation, as such, ' has no particular interest, and from which it derives no special benefit or ad-vantage in its corporate capacity, but which it is bound to see

performed in pursuance of a duty imposed by law for the general welfare of the inhabitants or of the community.'" And the court explains its former decision in the case of *Little* v. *City of Madison*, 42 Wis. 643 (24 Am. R. 435), relied upon by the appellant, as follows: " Yet the precise ground of the judgment in that case is, that if a municipal corporation, in the attempted exercise of any power conferred upon it by law, as to license shows, amusements and the like, exceeds its authority, and licenses the placing of a public nuisance in a street, or the unlawful and dangerous use of a street for any purpose, and an injury results therefrom, without negligence on the part of the person injured, the municipality is liable to respond in damages for such injury. The case goes no further, and could not without violating well settled principles of law."

Public streets are for the public use, and the use is none the less for the public at large because they are situated within a municipality and subject to its supervision, and, for this reason, placing obstructions thereon is an indictable offence and may be restrained in equity. Dillon, secs. 519 and 520; *Smith* v. *State*, 3 Zab. 712; *State, ex rel.,* v. *Cincinnati, etc., Co.,* 18 Ohio St. 262.

In the case of *Borough of Norristown* v. *Fitzpatrick*, 94 Pa. St. 121 (39 Am. R. 771), it was held that a person injured by the discharge of a cannon by a crowd collected together on one of the streets of the borough, which had been engaged in firing the cannon for amusement for some hours, was not entitled to recover from the village damages for such injury. GORDON, J., says:

"Admitting that a mob is a nuisance, and that of the worst kind, nevertheless, it is one that a municipal corporation could not abate by the use of ordinary appliances such as suffice for the removal of natural or material obstructions in or near a highway; resort must, therefore, be had to the police force, but, as we have already seen, for the doings or misdoings of those who compose this force the municipality is not liable."

If, as held in this case, a municipal corporation is not liable to a person injured by the discharge of a cannon by men collected in its streets for the purpose of firing the cannon for their amusement, it could hardly be held liable for an injury occasioned by the less dangerous amusement of persons coasting upon its streets. In the case cited, it was justly held that the persons engaged in the firing of the cannon were liable to the party injured, and so doubtless would the parties in this case, who were engaged in the unlawful sport which resulted in injury to the appellant, be liable to him in damages.

In the case of *Ray* v. *Manchester*, 46 N. H. 59, and in the case of *Hutchinson* v. *Concord*, 41 Vt. 271, it was held that coasting on a highway is not a defect in a highway for which a city or town is liable. The same has been held in Massachusetts. *Cole* v. *Newburyport*, 129 Mass. 594 (37 Am. R. 394) ; *Shepherd* v. *Inhabitants of Chelsea*, 4 Allen, 113.

In the case of *Hutchinson* v. *Concord, supra,* the court says :

" It is true that towns may be liable for damages by obstructions placed in the highway by others without any agency of the town or its officers, such as a log, wood, timber, or stone, if the town negligently suffers such obstructions to remain, exposing the traveller to danger. But in such case the road, with such objects resting upon it, is thereby rendered insufficient or out of repair ; and the town has the power to restore it to its proper condition. * * * But as to the boys with their sleds upon the road, it is quite different. It is not made unlawful by the statute, to travel upon the highway with such sleds, nor are the selectmen empowered to prohibit it. The selectmen are only empowered to prohibit one mode of use of such sleds, or like vehicles, upon the highway ; that is, coasting ; and then only when and where, in their opinion, the travelling public is, or is likely to be, endangered by it."

It is insisted by the appellant, that the rule in Massachusetts and other New England States upon this subject is more limited than it is elsewhere. The statutes of Massachusetts and the other New England States provide that highways

shall be kept in repair at the expense of the town or city in which they are situated, so as to be safe and convenient for travellers; and that any person who receives or suffers bodily injury through a defect or want of repair in the highway may recover the amount of damages thereby sustained, in an action against the city or town obliged to repair the same.

It is held under this statute that anything in the condition of a highway, which renders it unsafe or inconvenient for travel, is a defect or want of repair. It may be a hole in the highway, or it may consist of a stone or log or other obstacle left on its surface, or a post standing within its limits, or a barrier stretched across it, though not touching it; or it may be trees or walls standing by or upon it, and liable to fall and injure travellers; or it may be an awning projecting over it. For a failure to remove any obstruction from the highway, or to repair it and to keep it in a condition to be reasonably safe for travel, the statute expressly makes the city or town in which the highway is located, liable for injuries resulting from obstructions or want of repair of such highway.

The law of Indiana and many other States gives to incorporated cities jurisdiction over the streets located within their limits, and the means necessary to keep them in repair and reasonably safe for travel. Hence, the duty to keep the streets reasonably fit and safe for public use is implied, and also the liability for a failure to discharge this duty. It would seem, therefore, that the law of Indiana upon the subject is the same as that of Massachusetts. If, in this State, a city keeps the streets within its limits in a reasonably safe and convenient condition for public use, it has discharged its whole duty upon the subject; if a city in Massachusetts does less than this, it fails to discharge the duty imposed upon it by the statute of the State. If coasting upon a public street in a city in Indiana is to be regarded as an obstruction which the city is bound to prevent or suppress, it should be so regarded in Massachusetts.

Faulkner *v.* The City of Aurora.

In speaking upon the general implied liability of cities, Judge Dillon says, sec. 789:

"A municipal corporation is not an insurer against accidents upon the streets and sidewalks. Nor is every defect therein, though it may cause the injury sued for, actionable. It is sufficient, we think, if the streets (which include sidewalks and bridges thereon) are in a reasonably safe condition for travel in the ordinary modes, by night as well as by day." This is the liability which, under its statutes, is held to exist in Massachusetts.

In the case of *Barber* v. *City of Roxbury*, 11 Allen, 318, the court says:

"But we are not aware of any precedent for holding an illegal use of the highway by men, animals, vehicles, engines or any other object, while movable and actually being moved by human will and direction, and neither fixed to, nor resting on, nor remaining in one position within the travelled part of the highway, to be a defect or want of repair for which the city or town is liable."

It is obvious that in the case before us the injury did not result from any defect in the highway. It was produced by the act of those improperly and unlawfully using the highway, which was at the time, and but for the unlawful acts of those improperly using the street, in a reasonably safe and convenient condition for public travel. The complaint is not that the appellant's son was injured because of defects in the street rendering it unsafe and unfit for public use, but because persons, while engaged in improperly using the street, ran their coasting sled against his son, thereby injuring him. If the appellee is liable for the injury thus produced, it would follow, logically, that it would be liable for an injury caused by loafers lounging upon its streets, occurring in the presence of its officers, if it were known that such persons were accustomed to lounge and loaf upon its streets. To hold incorporated cities liable for such injuries would be unjust and, we think, without the sanction of law.

As was held in the case of *Borough of Norristown* v. *Fitz-patrick, supra,* the appellee could only arrest and stop the sport of coasting upon its streets through its officers and police force, but, as held in the same case, the appellee would not be responsible for the neglect or failure of its officers to stop those engaged in thus using its streets.

In the case of *Norristown* v. *Moyer,* 67 Pa. St. 355, re-lied upon by the appellant, it was incidentally and by way of illustration stated by the judge who tried the case, that persons lounging and loafing upon the street corners constituted a nuisance, but it was not held nor was it intimated that the city would be liable for the misdeeds of such loafers.

In the case of *Parker* v. *Mayor, etc.,* 39 Ga. 725, and the cases in this State referred to by the appellant, the objects rendering the use of the highway unsafe and dangerous were of a material nature, fixed, and not at the time being moved and controlled by human will and direction. They were such objects as would constitute a nuisance in Pennsylvania, Wis-consin and Massachusetts, as well as in Georgia or Indiana.

We think there was no error in sustaining the demurrer to the complaint.

PER CURIAM.—It is ordered, upon the foregoing opinion, that the judgment below be affirmed, at the costs of the ap-pellant.

COOMBS, J., dissents; NIBLACK, J., doubts.