GLENN, APPELLANT, *v.* VILLAGE OF REYNOLDSBURG ET AL., APPELLEES.

(No. 7325—Decided December 17, 1963.)

*Messrs. Shocknessy, Summers & Denton*, for appellant.
*Messrs. Knepper, White, Richards, Miller & Roberts* and *Mr. John M. Adams*, for appellee village of Reynoldsburg.
*Messrs. Vorys, Sater, Seymour & Pease* and *Mr. Charles D. Minor*, for appellee George J. Igel & Company, Inc.

BRYANT, J. This is an appeal on questions of law by Harley W. Glenn, appellant herein, plaintiff in the court below, from the judgment and final order rendered in the Franklin County Court of Common Pleas in favor of the village of Reynoldsburg, Ohio, and the George J. Igel & Company, Inc., appellees herein, defendants below. From an examination of the record, it appears that the principal controversy is between Glenn and the village of Reynoldsburg, hereinafter called the village.

It appears that the chief connection to this case of the George J. Igel & Company, Inc., hereinafter called Igel, was as sewer contractor employed by the village to lay a sewer line on the property involved in this lawsuit, and that the construction work of Igel has been either fully or substantially completed before this time.

The property in question is a narrow strip of land measuring one foot in width and 1,215.33 feet in length. From the pleadings and evidence in this case, including the two parts of plaintiff's exhibit A attached to the bill of exceptions, it appears that Austin W. Howell, on May 21, 1924, signed and acknowledged a plat for the "East Main Street Crest Addition" which was described as "a subdivision of 14.39 acres off of the north end of a 20-acre tract of land in Truro Twp. Franklin Co. and state of Ohio * * *." The plat was approved and accepted by the *then* county surveyor; was approved and accepted by the Board of County Commissioners of Franklin County

"and the roads, streets and alleys herein dedicated to public use are hereby accepted as such for the County of Franklin, state of Ohio."

The land represented by the plat was then transferred by the county auditor and the plat was recorded by the county recorder on May 31, 1924. The following language also appears as part of the caption or heading of the plat:

"All streets, roads and alleys lying within said bounds and not here in tofore dedicated are hereby dedicated to public use as such, *except a strip one foot wide along the East and West line of said tract of land which is hereby reserved to be dedicated when the adjoining owners so dedicates an equal width of alley.*"

As heretofore indicated, the plat related to land which was located in Truro Township, Franklin County, Ohio. It was substantially rectangular in shape. The property faced on the south side of "Main Street or Natl. Road," this frontage measuring approximately 490 feet from east to west. The platted land extended in a southerly direction from the National Road for a distance of 1,215.33 feet on the west side and 1,261.99 feet on the east side due to the fact that it did not abut upon the highway at right angles. In the center of the plat was Crest Street with a width of 60 feet, while on each side of it abutting on the highway were four lots each with a Main Street (Natl. Road) frontage of approximately 52 feet and a depth of from 161 feet to 206 feet. South of these eight lots was a 15-foot alley, and still further south on each side of Crest Street were 20 lots with a 50-foot frontage on Crest Street and a depth of 205 feet. At the extreme south end of the plat was Dale Street having a width of 40 feet.

Along both the east side and the west side of the plat there were strips of land 10 feet wide divided so that 9 of the 10 feet were dedicated as a public alley and the remaining one-foot strip was not dedicated. This one-foot strip was on the extreme outside of the plat along the entire east side and the west side. It would seem to us that, in 1924 at least, these two one-foot strips were not dedicated for any public purpose whatsoever but, on the contrary, were expressly excepted or reserved from any such dedication until the happening in the future of a dedi-

cation of another 10-foot strip by the owners of the property abutting the platted land on the east side and on the west side.

Directly involved in this lawsuit is the one-foot by 1,215.33-foot strip of land excepted from the 1924 dedication and lying along the west side of the platted land shown on plaintiff's exhibit A. We have already made reference to the express provision in the plat dedicating certain land for public use "except a strip one foot wide along the east and west line of said tract of land which is hereby reserved to be dedicated when the adjoining owners so dedicate an equal width of alley."

It would appear that the county auditor in making the necessary adjustments on the tax duplicate due to this plat regarded the land in question, which we shall refer to as the "West One-Foot Strip," as the property of Austin W. Howell, owner of the entire 1,439 acres prior to the time it was platted.

It appears also that, as to the "West One-Foot Strip," the taxes were not paid and became delinquent, and in due course the entire "West One-Foot Strip" was forfeited to the state of Ohio for nonpayment of taxes. Thereafter, it was put up for sale at the county auditor's sale of forfeited land and was purchased by Harley W. Glenn, plaintiff, appellant herein, the auditor's deed to Glenn being dated April 5, 1937.

This strip of land was placed on the tax duplicate in the name of Harley W. Glenn, and he paid the full amount of real estate taxes levied against it each year since 1937, until 1959, and any claim to the contrary has been expressly withdrawn. So far as appears in the record, no owners of land adjoining the plat on either the west side or the east side had taken any steps to accept the offer made by Howell in exhibit A by dedicating for public use as an alley an additional 10 feet of land alongside the East Main Street Crest Addition in the period between 1924 when the plat was filed and April 5, 1937, when the property was forfeited to the state and then sold at tax sale to Glenn.

Nor is it claimed that the additional 10 feet for an alley on either the west side or the east side was dedicated by "the adjoining owners" in the 12 years that followed the tax sale to Glenn.

However, in 1959 action began to take place to accept the

offer made 35 years prior thereto by Austin W. Howell. It appears that the property in the meantime had become a part of the village of Reynoldsburg and that health authorities objected to the use of septic tanks in the area and insisted that a sewer line be built to serve the residences in the area.

In any event, and for whatever reason, a special plat was filed for record on May 28, 1959, by Byron E. and Carolyn E. G. Sabin, owners of a tract of 8.235 acres (defendants' exhibit No. 1), in which the Sabins dedicated for alley purposes a strip 10 feet wide running along the entire west side of the "East Main Street Crest Addition" (plaintiff's exhibit A). The language on the plat over the signatures of the Sabins reads as follows:

"The undersigned Byron E. Sabin and Carolyn E. G. Sabin, his wife hereby certify that the attached plat correctly represents an alley to be dedicated for public use out of their 8.235 acre tract in state of Ohio, county of Franklin, township of Truro, village of Reynoldsburg, * * *."

The Sabin plat was also endorsed by the mayor, clerk and planning commission of Reynoldsburg above whose signatures appears the following:

"Approved this 26th day of Feb. 1959 and the alley herein dedicated together with the adjoining one foot reserve and the nine foot alley shown on the plat of East Main Street Crest Addition * * * are hereby accepted for Public Use as a twenty foot alley in accordance with the provisions of the dedication on the plat of said East Main Street Crest Addition by Ordinance No. 724, village of Reynoldsburg, Ohio."

It would appear that the language above set forth is considerably broader in scope than that which is contained in Ordinance No. 724 passed by the Council of the Village of Reynoldsburg which, so far as here relevant, reads as follows:

"Section One. That the plat of Byron E. Sabin and Carolyn E. G. Sabin be and the same hereby is approved and accepted and that the dedication to public use of the alley thereon shown be and the same hereby is accepted and confirmed."

In the court below, on the theory that the language found in the 1924 plat (plaintiff's exhibit A) constituted a covenant running with the land, it was held that Glenn purchased the

strip of land subject to this covenant which apparently extended for all time into the future without any limitation whatsoever. We have examined plaintiff's exhibit A with care, the operative language of which is set forth above. So far as we can learn from the record, Austin W. Howell at no time made any express promise to anyone to convey the "West Side One-Foot Strip" at any particular time, nor have we been able to ascertain where there was any consideration for whatever offer Howell made. A covenant is a form of contract and may frequently be found in deeds conveying title to real estate. In such cases there usually are a grantor and grantee, consideration is alleged and usually a promise, express or implied, based upon some benefit or detriment to the parties. In one sense, the language, "reserved to be dedicated when the adjoining owners so dedicates an equal width of alley," is merely an explanation of why the reservation is made. It will be noted that the land reserved includes "a strip one foot wide along the east and west line of said tract of land." The record is silent as to whether a similar dedication has been made as to the alley on the east side of the tract, and we express no opinion with reference thereto or whether dedication of both is required.

As we see it, the language used by Howell might properly be regarded either (1) as an explanation as to why he was not dedicating the entire 10 feet or (2) by implication that Howell was making an *ex parte* unilateral offer to parties unnamed but obviously including only "the adjoining owners."

It appears to us that prior to the tax forfeiture, Howell was owner of this land, that the state of Ohio became the owner by the forfeiture process, and that once forfeited the land was free from whatever offer may have been made by Howell. Clearly, he no longer was able to convey. Assuming that in 1924 Howell made such an offer, it is obvious that the only possible effective acceptance was action by adjoining owners who dedicated an equal width of alley and that no attempted acceptance by any one else even in 1937, whether public authority or otherwise, would have any effect.

We need not develop this argument further for the reason that no one, either individual or public authority, so far as this record goes, took any steps prior to 1937 to accept Howell's

proposition. Once the forfeiture took place, in our opinion, it was too late for any effective acceptance to occur.

In any event the proposition made by Howell was made while the tract was in Truro Township and before it was in the village of Reynoldsburg. That being the case, we are unable to conceive of any power vested in the village of Reynoldsburg to give effective approval to the Sabin dedication of a ten-foot alley and thereby accept an offer by Howell after the offer was no longer open.

The prayer of the petition is for general equitable relief and, in our opinion, the finding and judgment of the court below should have been that Glenn was the owner of the "West Side One-Foot Strip," that the village of Reynoldsburg had a right to condemn it if needed for health purposes, that it had not done so, and that plaintiff is entitled to equitable relief.

For the reasons above set forth, the judgment appealed from is reversed and set aside.

*Judgment reversed.*

DUFFY, P. J., and DUFFEY, J., concur.

DUFFEY, J., concurring. I concur in the decision and judgment but wish to reserve opinion on two points: (1) whether the Howell plat created a covenant running with the land and (2) if so, whether such a covenant was cut off by the tax forfeiture and sale.

The covenant, if any, has never been enforced and could not affect the legal title until it is enforced. As to equitable rights, the covenant, if any, is in favor of abutting owners, and Reynoldsburg is not within that class. Accordingly, the city has no legal or equitable interest in the premises. It is a trespasser.